AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 2:21-mj-381
AN APPLE IPHONE, SPACE GREY IN COLOR, FOUND IN )
RUBEN RAMOS URANGA'S POSSESSION AND SEIZED ON )
MAY 19, 2021, CURRENTLY LOCATED AT THE COLUMBUS )
DIVISION OF POLICE PROPERTY ROOM IN COLUMBUS, OHIO )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is fully incorporated herein.

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is fully incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841(a)(1) | Conspiracy to distribute and possess with the intent to distribute fentanyl |

The application is based on these facts:

See the attached Affidavit of HSI SA Clark S. Powers, which is fully incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Clark S. Powers, HSI Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 06/01/2021

_____
Judge's signature

City and state: Columbus, Ohio

Chelsey M. Vascura, United States Magistrate Judge
Printed name and title

## ATTACHMENT A

The property to be searched is an Apple iPhone, space grey in color, which was found in the possession of **Ruben RAMOS Uranga** and seized by law enforcement on May 19, 2021, listed as item number 7, property number 21P007473 on the Columbus Division of Police Evidence Inventory and currently located at the Columbus Division of Police Property Room in Columbus, Ohio (hereinafter referred to as "**Phone 1**").

This warrant authorizes the forensic examination of **Phone 1** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the device described in Attachment A that relate to violations of 21 U.S.C. §§ 846 and 841(a)(1) including:

    a. Any contact made either by call, text message, email, or third-party application between the seized device and other parties. Third-party applications may include (but are not limited to):

        i. KIK Messaging App

        ii. BlackBerry Messenger (BBM)

        iii. What's APP

        iv. Signal

        v. Tango

        vi. Facebook Messenger

        vii. Group Me

        viii. Voxer Messenger

        ix. Yahoo Messenger

        x. Google Maps and other Mapping applications

    b. Any information about the types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. Any information related to sources or distributions of drugs (including names, addresses, phone numbers, pictures, or any other identifying information);

    d. Any information related to Ruben RAMOS Uranga's schedule or travel;

    e. All bank records, checks, credit card bills, account information, and other financial records that may reveal evidence of drug trafficking and/or money laundering; and

      f. Evidence of user attribution showing who used or owned the device at the time the items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

2. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE, SPACE GREY IN COLOR, WHICH WAS FOUND IN THE POSSESSION OF **RUBEN RAMOS URANGA** AND SEIZED BY LAW ENFORCEMENT ON MAY 19, 2021, LISTED AS ITEM NUMBER 7, PROPERTY NUMBER 21P007473 ON THE COLUMBUS DIVISION OF POLICE EVIDENCE INVENTORY AND CURRENTLY LOCATED AT THE COLUMBUS DIVISION OF POLICE PROPERTY ROOM IN COLUMBUS, OHIO | Case No. _____<br><br>**UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Clark S. Powers, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—one cellular telephone—which is currently in law enforcement possession, and the extraction from that cellular telephone of electronically stored information described in Attachment B.

1. Starting in December 2016, I have been employed as a Special Agent (SA) with U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I am currently assigned to the HSI Columbus, Ohio office and I have been so assigned since October 2020. Prior to this assignment, I was assigned to our Sells, Arizona office from December 2016 to October 2020. During that time, I was assigned to the Sells Border Enforcement and Security Task Force (BEST), which focused on human, narcotics, bulk cash, and weapon smuggling occurring between Ports of Entry (POE) and the Phoenix metropolitan area.

2. Through both my training and experience, I am familiar with narcotics traffickers' methods of operation including the importation, distribution, and transportation of illegal drugs, the collection of money, and money laundering.

3. Based on my experience, training, and conversations with other HSI Special Agents, DEA Special Agents, and Task Force Officers employed by the Central Ohio High Intensity Drug Trafficking Area (HIDTA), I have experience in conducting criminal investigations of violations of Title 21 (controlled substance statutes) and Title 19 (customs statutes) of the United States Code. I have observed and learned narcotics trafficking organizations utilize several methods to insulate their illegal activities from law enforcement detection. These methods are common to major narcotics trafficking organizations and vary in levels of sophistication.

4. Through my training and experience, I know drug trafficking organizations commonly use electronic devices, cellular telephones, and radio telephones in an attempt to maintain secure communications between network members and customers. They use these devices during the commission of their criminal activity and the events preceding and following such activity for the following reasons:

    a) They use cellular telephones to arrange, coordinate, and monitor smuggling activities including communicating with other smugglers, arrangers, and other transporters/drivers to coordinate narcotics loads. They also use cellular telephones to communicate with these same individuals during counter-surveillance activities, and to warn co-conspirators of the presence of law enforcement or other obstacles to their smuggling plans.

    b) They use cellular telephones to contact financial institutions where they launder their proceeds or receive monies for payment for their roles in the scheme, as well

        as to contact individuals who sell/rent real estate, vehicles, or other facilities the smuggler uses to conduct illegal activities.

    c) They use all the communication technologies available within the particular cellular telephone, including voice messaging, texting, audio communications, direct dial, push-to-talk, email, internet access, communication applications, encrypted communications, photo and video images, and contact lists containing information about their criminal associates to accomplish their illicit activities.

    d) They use multiple cellular telephones and often change cellular telephones to avoid detection by law enforcement.

5.     I am investigating an organized group of individuals some known and unknown currently, including **Ruben RAMOS Uranga**. The organization is suspected of conspiring to distribute and possess with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1).

6.     The facts in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

7.     Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (conspiracy to distribute and possess with intent to distribute 400 grams or more of a substance containing a detectible amount of fentanyl) has been committed by **Ruben RAMOS Uranga**. There is also probable cause to believe evidence relating to the above criminal violation under investigation, including the user of the cellular telephone and information about both known and unknown co-conspirators, will be stored

3

on, or tied to the cellular telephone. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning this information.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8. The property to be searched is an Apple iPhone, space grey in color, which was found in the possession of **Ruben RAMOS Uranga** and seized by law enforcement on May 19, 2021, listed as item number 7, property number 21P007473 on the Columbus Division of Police Evidence Inventory and currently located at the Columbus Division of Police Property Room in Columbus, Ohio (hereinafter referred to as "**Phone 1**").

9. The applied-for warrant would authorize the forensic examination of **Phone 1** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

10. On May 18, 2021, Homeland Security Investigations (HSI) Special Agents and Task Force Officers assigned to the Central Ohio High Intensity Drug Trafficking Area (HIDTA) Bulk Cash Smuggling Task Force were conducting surveillance around Interstate 270 and West Broad Street in Columbus, Ohio. At approximately 7:51 a.m., HSI Task Force Officer Mike Shippitka located a red Ford Fusion, bearing rear Georgia license plate number RVA9885, backed into a parking space adjacent to the Red Roof Inn located at 4530 West Broad Street, Columbus, Ohio. Through my training and experience, I know that backing into a parking space can be indicative of an individual potentially attempting to conceal the view of their license plate from being easily viewed. The registered owner of the vehicle is PV Holding Corporation, which is a rental company, utilizing address 4340 Global Gateway Connector, College Park, Georgia. Investigators are familiar with drug smuggling organizations utilizing third-party rental vehicles in an attempt to create anonymity for the individuals trafficking narcotics and to help reduce the

chance of the vehicle being seized if caught. Task Force Officer Shippitka contacted PV Holding Corporation and was informed that the vehicle was rented from the Columbus International Airport and confirmed an individual named Ruben Ramos had rented the car. Task Force Officer Shippitka was also informed that the vehicle was originally due back to the rental company on May 17, 2021.

11. Columbus Police Detective Kevin George and I attempted to positively identify Ruben Ramos (aka Ruben RAMOS Uranga) utilizing numerous law enforcement databases. I determined that RAMOS Uranga had entered the United States from the Republic of Mexico through the El Paso, Texas Port of Entry (POE) on May 9, 2021. Based on RAMOS Uranga's recent border crossing, investigators determined that physical surveillance of the red Ford Fusion and its suspected operator was warranted.

12. On May 18, 2021, Task Force Officer Shippitka contacted Ohio State Highway Patrol (OSP) Trooper and K-9 Handler Lindsay Barrett and requested she conduct an open-air sniff of the red Ford Fusion with her K-9. The red Ford Fusion was parked in the rear parking lot of the Red Roof Inn when it was observed by investigators. At approximately 8:20 a.m., OSP Trooper Barrett's K-9 partner Gali alerted to an odor he is trained to detect emanating from the driver side door of the red Ford Fusion. Investigators observed a male subject, later determined to be RAMOS Uranga, leave the Red Roof Inn to purchase items from a nearby Family Dollar. RAMOS Uranga then returned to the Red Roof Inn. Investigators later observed RAMOS Uranga get into the Georgia plated red Ford Fusion and travel to D & A Truck and Trailer Repair, located at 3620 Fisher Road, Columbus, Ohio. RAMOS Uranga later departed D & A Truck and Trailer Repair and continued onto Interstate 70 East. Task Force Officer Shippitka notified other HIDTA units in the area that RAMOS Uranga had merged onto Interstate 670 East and was preparing to exit onto West Goodale Street near Goodale Park. Investigators observed progressively erratic driving

5

behavior from RAMOS Uranga. Investigators observed the vehicle make a series of erratic turns through downtown Columbus before traveling northbound to the Short North Arts District. The driving activity observed by investigators is indicative of an individual adept at counter-surveillance and eluding detection from law enforcement personnel. After losing visual briefly, investigators located the red Ford Fusion parked in a metered parking spot near the Columbus Running Company, located at 765 North High Street. RAMOS Uranga later exited his vehicle and traveled on foot to an unknown location where investigators lost visual. The physical surveillance for the day concluded at that time.

13. On May 19, 2021, at approximately 6:20 a.m., Task Force Officer Shippitka located the Georgia plated red Ford Fusion parked in the parking lot of the Red Roof Inn, located at 4530 West Broad Street, Columbus, Ohio. RAMOS Uranga was observed departing the Red Roof Inn, wearing tan khaki pants and a red polo shirt. RAMOS Uranga returned to the D & A Truck and Trailer Repair at 3620 Fisher Road, Columbus, Ohio. Law enforcement conducted surveillance and observed him driving to various locations. At one point, RAMOS Uranga drove northbound on Hilliard Rome Road and immediately turned into the Westpointe Plaza shopping center parking lot, where the target vehicle was observed driving at a high rate of speed through the parking lot, and then exiting onto Renner Road. Eventually, RAMOS Uranga was observed exiting Interstate 70 east onto Wilson Road, where he stopped to refuel his rental vehicle at a Pilot Travel Center located at 3600 Interchange Road, Columbus, Ohio. HSI SA Brandon Edwards observed RAMOS Uranga speaking on the phone as he refueled his vehicle. RAMOS Uranga departed the Pilot and returned to the D & A Truck and Trailer Repair.

14. Investigators observed RAMOS Uranga drive his rental vehicle northbound into the gated lot at the D & A Truck and Trailer Repair before losing visual. At approximately 1:25

p.m., I reacquired visual of RAMOS Uranga and his red Ford Fusion parked adjacent to a maroon color car hauler, bearing an unreadable Texas license plate. I noticed that the trunk of the red Ford Fusion was open, and RAMOS Uranga was moving items from the trunk into the passenger side of the maroon car hauler. RAMOS Uranga then departed the fenced parking lot in the red Ford Fusion and traveled to the Columbus International Airport rental car return deck. Task Force Officer Shippitka contacted Airport Police Task Force Officer Eric Doyle and provided him with a physical description of RAMOS Uranga. Task Force Officer Doyle informed investigators that RAMOS Uranga returned his rental car, and then RAMOS Uranga approached the departures entrance of the airport, before returning to the rental car return area. Task Force Officer Doyle stated that RAMOS Uranga was exhibiting nervous behavior by pacing and looking around the area. RAMOS Uranga appeared to be "texting" on **Phone 1** before being observed getting into a white Toyota sedan, later identified as an Uber transport vehicle. Investigators observed the Uber return RAMOS Uranga to D & A Truck and Trailer Repair. RAMOS Uranga was driven through the entrance gate and towards the previously observed maroon car hauler. At approximately 3:05 p.m., the car hauler was observed departing the parking lot of D & A Truck and Trailer Repair, traveling northbound on Wilson Road, and merging onto Interstate 70 westbound. Investigators maintained surveillance as the car hauler was observed exiting Interstate 70 to refuel at the Pilot Travel Center located at 1365 State Route 42 Northeast, in London, Ohio.

15.  After RAMOS Uranga refueled the car hauler, he continued onto Interstate 70 westbound. Eventually, OSP Trooper Lindsay Barrett initiated a traffic stop of the car hauler for failing to signal a lane change and having an obstructed view of the rear license plate, and for investigative purposes. Ohio State Patrol utilized their fully marked units and conducted the stop on Interstate 70 near the South Vienna Rest Stop westbound. RAMOS Uranga presented OSP

7

Trooper Barrett with his Mexican commercial driver's license and stated he was in Columbus to deliver cars. No bills of lading for vehicle deliveries were present in the vehicle. The truck was identified as a 2005 West Star, bearing Texas license plate R521795, registered to H&R Auto Transport LLC at 415 South Mesa Hills Driver, Apartment 1346, El Paso, Texas. Earlier records checks identified the same El Paso address as RAMOS Uranga's home address. During the traffic stop, the narcotics K-9 conducted an open-air sniff of the cab, positively alerting to an odor he is trained to detect emanating from the passenger side. A subsequent probable cause search of the cab revealed five packages of suspected narcotics, wrapped in black tape, plastic wrap, and concealed within a black backpack. RAMOS Uranga told investigators that he had taken a sample of the substance contained within one of the five seized packages and put it into a cigarette box which he placed on the dashboard of his vehicle. The substances in these five packages and the substance in the cigarette box were analyzed by Forensic Scientist II Kara B. Horton, who is assigned to the Drug Identification Section of the Columbus Police Crime Laboratory in Columbus, Ohio, and, in total, the substances were determined to be more than 5 kilograms of fentanyl.

16.    Task Force Officer Shippitka and I conducted a custodial interview of RAMOS Uranga. Task Force Officer Shippitka provided RAMOS Uranga's his constitutional rights in the Spanish language as Spanish was his primary language. Upon reading the constitutional rights aloud, RAMOS Uranga stated he understood his rights and was able and willing to converse with investigators in the English language. RAMOS Uranga stated he was in Columbus to drop off narcotics to an individual unknown to him. RAMOS Uranga explained the buyers never showed up and he intended to return to Saint Louis, Missouri with the suspected narcotics. RAMOS Uranga stated he was offered money to transport narcotics by an individual in Juarez, Mexico,

known only as Aurelio. When asked what he was transporting, RAMOS Uranga stated "heroin I think." RAMOS Uranga stated this was his first trip to Columbus but clarified that he had previously transported bulk cash proceeds from Dallas, Texas to Mexico as recently as April 2021. RAMOS Uranga approximated he had transported $100,000 to Mexico over the course of three trips. RAMOS Uranga communicated with the Mexican facilitator, Aurelio, via WhatsApp on **Phone 1**, and the contact was saved as "Aurelio." WhatsApp is a phone application known to investigators as a preferred medium of communication for those involved in the illicit trafficking of narcotics, due to the end-to-end encryption of messages sent between co-conspirators. Investigators asked for consent to search **Phone 1** to which RAMOS Uranga declined and requested to speak with an attorney. Throughout the duration of surveillance, investigators witnessed RAMOS Uranga using **Phone 1** for what appeared to be phone calls, typing, and texting. I believe this behavior corroborates with RAMOS Uranga's admission above that he communicates with his Mexican facilitator utilizing **Phone 1**.

17.     **Phone 1** is currently in the custody of the Columbus Division of Police, Columbus, Ohio, which is within the Southern District of Ohio. Based on my training and experience, I know **Phone 1** was stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when **Phone 1** first came into law enforcement's possession.

18.     Probable cause exists to believe that **Phone 1** may contain evidence identifying: (1) cellular telephone numbers used by drug trafficking associates; (2) telephone calls conducted with drug trafficking co-conspirators (including time, date, and duration of calls); (3) photographs of and/or with drug trafficking co-conspirators, illegal controlled substances, and/or currency; (4) text and/or voicemail message communications (including time and date) with drug trafficking

associates; (5) electronic mail and social media internet sites accessed by the users of the devices; (6) usernames and/or passwords utilized by the users of the devices to access electronic mail and social media internet sites; and (7) addresses, locations, and locations frequented by **Phone 1**.

19. Based on my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I know that drug trafficking organizations utilize cellular telephones (such as **Phone 1**) to communicate when conducting their illegal activity, utilizing the voice, text, and electronic mail (if accessible) functions of the cellular telephone to do so. These devices are utilized in furtherance of the crime by coordinating the transport and distribution of controlled substances, the collection and movement of currency, as well as communicating with members of the drug trafficking organization about the specific operations of that organization.

20. Further, based on my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I know that individual members of drug trafficking organizations often carry and utilize more than one cell phone per person at a time. It is common practice for these individuals to use different phones or various phone applications to communicate with different members of the drug organization. This helps insulate individuals from being linked to the greater conspiracy if one member is caught by law enforcement. Additionally, when communicating with drug trafficking organizations based in Mexico, it is common to see phones or SIM cards that are solely used to communicate with the individuals in Mexico, and phones or SIM cards solely used to communicate with individuals in the United States.

## TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system (GPS) technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras

11

    also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

  c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The GPS consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

 22. Based on my training, experience, and research, I know that **Phone 1** has capabilities that allow it to serve as a wireless telephone, digital camera, and GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

 23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, items that have been viewed via the Internet is typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **Phone 1** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **Phone 1** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves.

13

    Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **Phone 1** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27. I believe this affidavit establishes probable cause for a search warrant authorizing the examination of **Phone 1** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Clark S. Powers
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on June 1, 2021:

_____
Chelsey M. Vascura
UNITED STATES MAGISTRATE JUDGE

15